IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICODEMO DIPIETRO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT GILMORE, et al. | : | NO. 13-6438 |

## ORDER-MEMORANDUM

**AND NOW**, this 29th day of June, 2015, upon careful and independent consideration of the Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Docket No. 1), and after review of United States Magistrate Judge Elizabeth T. Hey's Report and Recommendation (Docket No. 22), and consideration of Petitioner's Objections to the Report and Recommendation (Docket No. 24), **IT IS HEREBY ORDERED** that:

1. Petitioner's Objections are **OVERRULED.**

2. The Report and Recommendation of Magistrate Judge Hey is **APPROVED** and **ADOPTED**.

3. The Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

4. As Petitioner has failed to make a substantial showing of the denial of a constitutional right or demonstrated that a reasonable jurist would debate the correctness of this ruling, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

5. The Clerk is directed to **CLOSE** Civil Action No. 13-6438.

On August 7, 2001, a jury in the Philadelphia Court of Common Pleas convicted Petitioner of first-degree murder and other crimes, following a shooting in an after-hours social club. Thereafter, the state court sentenced Petitioner to life imprisonment on the murder count.

Petitioner subsequently completed direct and Post Conviction Relief Act ("PCRA") appeals in the state court system, and filed the instant § 2254 Petition asserting six grounds for relief: (1) the Commonwealth violated his due process rights when it failed to disclose every page of a multi-page interview summary, which contained exculpatory information; (2) his due process rights were violated by the state court's failure to declare a mistrial after the prosecutor made improper references to the mafia and race in his closing statement; (3) his trial counsel was ineffective for opening the door to the prosecutor's references to the mafia; (4) his trial counsel was ineffective in failing to obtain the entire multi-page interview summary; (5) his trial counsel was ineffective in failing to object to the prosecutor's reference to his uncharged bad acts; and (6) his counsel was ineffective in failing to federalize two of his claims on direct appeal, so as to preserve his right to federal review. The Magistrate Judge has recommended in a thorough and well-reasoned Report and Recommendation ("R&R") that we deny the Petition in its entirety. Petitioner has asserted numerous Objections to the R&R.

Petitioner's first set of Objections concerns the Magistrate Judge's treatment of his first and fourth grounds for relief regarding the Commonwealth's failure, prior to trial, to produce the latter two pages of a three-page document, which summarized an alleged FBI interview with Petitioner. The two undisclosed pages recorded Petitioner's purported statement that another man, "Casantos," shot the murder victim and then tossed the murder weapon to Petitioner. Petitioner argued in his direct and PCRA appeals that the Commonwealth's failure to disclose the two pages violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and that his trial counsel was ineffective in failing to pursue the obviously missing pages prior to trial. Petitioner now argues that the Magistrate Judge erred in recommending that the state courts' denial of his <u>Brady</u> and ineffectiveness claims based on Petitioner's failure to establish the requisite prejudice was

consistent with, or a reasonable application of, Brady and Strickland v. Washington, 466 U.S. 668 (1984),[1] and was based on a reasonable determination of the facts. See 28 U.S.C. § 2254(d).

Petitioner's arguments regarding the prejudice that he suffered due to the Commonwealth's failure to disclose (and counsel's failure to obtain) the missing pages are a bit difficult to follow. On the one hand, he contends that he did not speak with any FBI agent, and that the documented interview is therefore fabricated insofar as it identifies him as the interviewee. At the same time, he takes the position that the substance of the statement (the accounting of the events surrounding the shooting) is true and accurate, and he maintains that the FBI agent must have obtained that information from an unidentified witness whom it has never disclosed. With these premises, Petitioner contends that there is a reasonable probability that the result of his trial would have been different if the missing pages had been disclosed because the pages exonerated him and identified the actual shooter. He also submits an affidavit from his trial lawyer, who states that, if he had obtained the missing pages prior to trial, he would have discussed the pages with Petitioner; engaged in discovery to determine what efforts law enforcement had made to

---

[1] "[T]o establish a Brady violation requiring relief, a [petitioner] must show that (1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." Lambert v. Blackwell, 387 F.3d 210, 252 (3d Cir. 2004) (citations omitted). The materiality requirement is essentially a prejudice requirement as information is material "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Johnson v. Folino, 705 F.3d 117, 128 (3d Cir. 2013) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

Similarly, in order for a petitioner to prevail on an ineffectiveness claim under the Strickland standard, he must show that his counsel's deficient performance was so prejudicial that it deprived him of a fair trial. 466 U.S. at 687. To prove such prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Moreover, when assessing a Strickland claim in a § 2254 proceeding, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington v. Richter, 562 U.S. 86, 101 (2011).

3

investigate Casantos's involvement in the murder; independently "investigated the contents of the statement to determine [if] there were any eyewitnesses who could have verified the account of the shooting;" and questioned the Commonwealth's witnesses about seeing other people leaving the site of the shooting after it occurred. (Stephen B. Jarrett Aff., 8/31/05, ¶ 12.) In essence, then, Petitioner primarily contends that the result of his trial would have been different if the missing pages had been disclosed because he would have known to implicate Casantos in the murder and would have successfully done so, using the partially-fabricated statement as well as other unidentified evidence that he would have obtained as a result of his attorney's investigation.

However, like the Magistrate Judge, we can find no fault with the state courts for failing to find such prejudice. The statement in the missing pages, which Petitioner asks us to credit (but not to attribute to him), recounts that (1) Petitioner and Casantos were "shaking down" an individual at the after-hours club, and approached the murder victim about making a payment; (2) Petitioner, Casantos and the victim argued; (3) Petitioner began hitting the victim; (4) Casantos shot the victim and then tossed the gun to Petitioner; (5) Petitioner and Casantos split up; and (6) Petitioner fled with the gun and got caught. (R.R. 8-9.) By that very account, Petitioner was present at the murder and was aware of the identity of the shooter and the circumstances of the shooting. Under these circumstances, the Magistrate Judge correctly recommended that the state courts reasonably concluded that he could not establish that he suffered prejudice due to the Commonwealth's failure to share that same information with him, and could not claim that he was prejudiced by his lawyer's failure to obtain from the Commonwealth (and act on) information that he himself voluntarily withheld from the lawyer. See, e.g., United States v. Pelullo, 399 F.3d 197, 213 (3d Cir. 2005) ("Brady does not compel the government to furnish a defendant with information which he already has." (quotation omitted)); (R&R at 16 (recommending that where,

4

as here, Petitioner has not denied being present at the shooting or aware of Casantos's presence, he already held "the key nugget of information contained in the report" and cannot claim to have been prejudiced from its nondisclosure).)

Petitioner offers an alternative argument as to how he was prejudiced, which is grounded on a theory that the FBI intentionally fabricated the statement from him "for the . . . purpose of using it and the threat of its disclosure to force Petitioner to turn 'snitch' and testify on their behalf against Casantos," who was "'higher up' on the mafia hierarchy and much more significant a 'catch' than Petitioner." (Pet'r's Objections ("Objs.") ¶ 1.f.) Under this theory, Petitioner argues that he was prejudiced by the non-disclosure and counsel's ineffectiveness because, if counsel had received the undisclosed pages, he would have (1) engaged in discovery to prove that no interview with Petitioner took place (by proving that there was no 302 form generated), and then (2) developed and obtained evidence with which to impeach the FBI agent who purportedly took the statement from Petitioner. Petitioner suggests that he would thereby prove the conspiracy and establish that he had been improperly framed for the murder.

When Petitioner made this argument in his PCRA proceedings, the trial court commented that "without any basis in fact, [Petitioner] weaved a story to claim that these missing documents may have demonstrated a police conspiracy against [him]," and concluded that Petitioner "ha[d] not shown . . . any possibility of a conspiracy that convicted an innocent man [or] . . . how trial counsel was ineffective for failing to discover such a conspiracy." <u>Commonwealth v. DiPietro</u>, VCP-51-CR-0401701-2000, Op. at 5-6 (Phila. CCP Jan. 19, 2012) ("1/19/12 CCP Op."). On PCRA appeal, the Superior Court likewise acknowledged Petitioner's assertion that there had been a law enforcement conspiracy to produce false documentation for an "ulterior motive," but ultimately concluded that Petitioner had "simply failed to show how he has been prejudiced by

5

counsel's failure to secure the additional pages of the police summary of a statement that [Petitioner] denies making and which was not used at trial." Commonwealth v. DiPietro, No. 353 EDA 2011, Mem. at 13 (Pa. Super. Ct. July 24, 2013) ("7/24/13 Super. Ct. Mem."). We find these conclusions to be reasonable given that Petitioner had produced no evidence to support his allegations of a conspiracy.[2]

Notably, even though he has produced no facts to support his conspiracy theory, Petitioner argues that the Magistrate Judge erred in failing to afford him an evidentiary hearing to develop facts regarding "how defense counsel's knowing that the FBI had planted . . . false information and why they had done it would have impacted on his theory of the case and/or his strategy." (Objs. ¶ 1.b.) In advancing this argument, Petitioner neglects to acknowledge that federal courts have limited authority to conduct evidentiary hearings on habeas review. Under the habeas statute, where an applicant has "failed to develop the factual basis of a claim in State court proceedings," we are not permitted to hold a hearing unless the Petitioner shows, inter alia, that the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review," or relies on a "factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). Petitioner has not even acknowledged this standard, much less developed an argument that he has satisfied it. Moreover, even assuming *arguendo* that we were authorized to hold a hearing under § 2254(e)(2), "the decision to grant such a hearing rests in [our] discretion" and, in exercising that discretion, we are to consider "whether the petition presents a *prima facie* showing which, if proven, would enable the petitioner to prevail on the

---

[2] In this regard, we specifically observe that Petitioner has produced no evidence that anyone actually used the fabricated statement "to force Petitioner to turn 'snitch' and testify on their behalf against Casantos." (Objs. ¶ 1.f.)

merits of the asserted claim." Palmer v. Hendricks, 592 F.3d 386, 393 (3d Cir. 2010) (citations omitted). Here, Petitioner has simply not alleged a plausible claim of prejudice that would enable him to prevail on the merits of his Brady and ineffectiveness claims. We therefore overrule Petitioner's objection to the Magistrate Judge's refusal to hold an evidentiary hearing.

Under the circumstances, we simply cannot conclude that the Superior Court unreasonably applied either the Brady or Strickland standard when it concluded that Petitioner had failed to establish the requisite prejudice necessary to support such claims. We therefore overrule Petitioner's objections to the Magistrate Judge's recommendation that the Superior Court reached reasonable conclusions in this regard, and likewise overrule his objections to the Magistrate Judge's failure to hold an evidentiary hearing on this issue.

Petitioner's second set of Objections concerns the Magistrate Judge's treatment of his third ground for relief insofar as it concerns the prosecutor's trial references to organized crime. Specifically, Petitioner argues that the Magistrate Judge erred in recommending that the Superior Court was not unreasonable in concluding on PCRA appeal that he was not prejudiced by the mob references and, thus, could not prevail on his ineffectiveness claim grounded on counsel's having opened the door to those references.[3] In Petitioner's view, the sole purpose of the mob-related references was to "impress upon the jury that if Petitioner were involved in the 'Mob' he is a

---

[3] Petitioner also argues that the Magistrate Judge erred in recommending, in connection with his second ground for relief, that the Superior Court was not unreasonable in concluding that he could not prevail on his due process claim based on the prosecutor's mob references because he was not prejudiced by those references. However, contrary to Petitioner's assertion, the Superior Court, on direct appeal, did not reject his due process claim because he failed to establish prejudice but, rather, because defense counsel opened the door to the mob references by being the first to mention the mob. The Magistrate Judge recommends that this resolution of the due process claim was not unreasonable and Petitioner does not take issue with this aspect of the Magistrate Judge's recommendation. Accordingly, Petitioner has suggested no basis on which we could overrule the Magistrate Judge's recommendation regarding his second ground for relief.

criminal." (Objs. ¶ 2.a.) The record reflects, however, that the prosecutor never suggested that Petitioner was a member of the mob. In fact, he stated in closing that "[t]his case is not about the mob" and simply suggested that Petitioner was a "mob wannabee who's trying to get money out of a person." (N.T. 8/6/01 at 94.) Petitioner also takes issue with the Magistrate Judge's recommendation that the evidence of his guilt was "quite strong" (R&R at 23), and he points to evidence that witnesses offered descriptions of the shooter that did not match his own appearance. However, as the Superior Court correctly noted on direct appeal, an eyewitness "unwaveringly gave an in-court identification of [Petitioner] as the shooter," and "[a]ny discrepancies in the physical description pale in the light of the other evidence presented at trial, including witnesses testifying that they saw [Petitioner] flee the scene and attempt to hijack a car." Commonwealth v. DiPietro, No. 2768 EDA 2006, Mem. at 4 (Pa. Super. Ct. July 30, 2008). Based on this analysis and our own review of the trial record, we reject Petitioner's argument that the Magistrate Judge erred in recommending that the evidence of his guilt was "quite strong." We therefore overrule Petitioner's objections to the Magistrate's recommendations concerning the mob-related reference and, on de novo review, approve and adopt the Magistrate Judge's recommendation that the Superior Court reasonably concluded on PCRA appeal, based on review of the entire trial record, that Petitioner failed to establish that he was prejudiced by counsel's conduct in opening the door to the mob-related testimony.

Petitioner's third set of Objections concerns the Magistrate Judge's treatment of his claim that his counsel was ineffective in failing to object when the prosecutor elicited information at trial about his uncharged bad acts -- specifically, that Petitioner threatened a Commonwealth witness during the preliminary hearing. The Superior Court found, just as the PCRA court had, that the evidence of Petitioner's bad act was admissible to show Petitioner's consciousness of guilt

8

pursuant to state law. See 7/24/13 Super. Ct. Mem. at 14 (citing Commonwealth v. Rega, 933 A.2d 997, 1009 (Pa. 2007)); 1/19/12 CCP Op. at 7. It therefore concluded that it was "questionable" whether counsel could even be found ineffective for failing to object to that evidence. 7/24/13 Super. Ct. Mem. at 15 (citing Rega, 933 A.2d at 1018-19 (stating that counsel cannot be found ineffective for failing to raise a meritless claim)). The Superior Court further stated that, upon consideration of the evidence presented, it could not find that Petitioner was prejudiced by trial counsel's failure to object to this evidence. Id. The Magistrate Judge subsequently recommended that the Superior Court's determination that the evidence was admissible was an unreviewable issue of state law and that the Superior Court's rationale that counsel could not be considered ineffective in failing to raise a meritless objection to the evidence was sound. Alternatively, the Magistrate Judge recommended that Petitioner had established no insufficiency in the Superior Court's prejudice analysis.

Petitioner now objects to the Magistrate Judge's recommendation regarding the prejudice analysis, without taking issue with her recommendation that the Petitioner ineffectiveness claim also failed on the performance prong of Strickland, because he had not established that counsel failed to raise a claim that had merit. Under these circumstances, even if we were to accept Petitioner's argument as to the prejudice prong, we could not sustain his objection to the Magistrate Judge's overall recommendation that he is not entitled to relief on this claim. Moreover, we do not find Petitioner's argument on the prejudice prong to be compelling. We thus adopt the Magistrate Judge's recommendations that Petitioner has failed to satisfy either prong of the Strickland test and that the state courts' analysis and resolution of the ineffectiveness claim was neither contrary to, or an unreasonable application of, federal law nor "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §

9

2254(d)(1)-(2).

In his fourth set of Objections, Petitioner argues that the Magistrate Judge erred by recommending that: (1) he procedurally defaulted his claim that his counsel was ineffective for failing to "federalize" at least two due process arguments on direct appeal (a sufficiency of the evidence claim, and an after-discovered evidence claim), because he did not raise this claim of ineffectiveness on PCRA appeal; and (2) even if not defaulted, the ineffectiveness claim is meritless, because the underlying claims were meritless. However, without even reaching the question of procedural default, we can find no error in the Magistrate Judge's analysis of the merits of the underlying claims. Petitioner argues that Magistrate Judge's analysis of his sufficiency of the evidence claim was flawed because the Magistrate Judge (like the state court) considered evidence that he ran from the club and tried to hijack a car with the murder weapon to be supportive of the jury's verdict when such evidence could "just as easily be interpreted" to support his version of events that Casantos shot the victim then tossed the gun to him. (Objs. ¶ 4.b.) However, in addressing challenges to the sufficiency of the evidence, federal law requires that we "review[] the evidence in the light most favorable to the prosecution." Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Accordingly, we can find no flaw in the Magistrate Judge's recommendation that the evidence of Petitioner's flight and possession of the gun properly supported a conclusion that Petitioner was the shooter. We therefore overrule Petitioner's objections to this aspect of the Magistrate Judge's recommendation, and we approve and adopt the recommendation that Petitioner's underlying due process claims are meritless and that counsel cannot be found ineffective for failing to federalize them. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless

argument." (citations omitted)).

Finally, Petitioner objects to the Magistrate Judge's recommendation regarding his claim of cumulative error and her recommendation that we not issue a certificate of appealability. Upon consideration of these cursory objections, we conclude that the Magistrate Judge thoroughly addressed and correctly resolved the cumulative error issue, and properly recommended that no certificate of appealability issue.

For all of these reasons, we overrule Petitioner's Objections and approve and adopt the Magistrate Judge's Report and Recommendation.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.